Salvatore CARIDI, Plaintiff,

v.

New York State Trooper Keith L.
FORTE, et al., Defendants.

No. 95 Civ. 6663 (CLB).

United States District Court,
S.D. New York.

May 27, 1997.

John T. Gildea, White Plains, NY, for plaintiff.

Elizabeth G. Ellis, State of N.Y., Office of the Attorney General, New York City, for defendants.

### MEMORANDUM & ORDER

BRIEANT, District Judge.

By motions heard April 23, 1997, Plaintiff and Defendants in this action pursuant to 42 U.S.C. § 1983 charging the excessive use of force, seek summary judgment in their favor.

Plaintiff Salvatore Caridi, Jr. is a self-employed landscaper who resides in this dis-

trict. Defendants are members of the New York State Police. The facts set forth below are admitted or assumed true for purposes of the motion.

On February 26, 1994, Plaintiff was driving his automobile southbound on Interstate 87 ("I–87") with a passenger Bruce Malone. At approximately 5:15 p.m., Plaintiff approached the Yonkers Toll Plaza. Defendant Forte, a State Trooper, was stationed at the toll plaza. Trooper Forte heard the sound of screeching tires and turned his head in time to view the Plaintiff's vehicle speeding at approximately 70 miles per hour toward the toll barriers. Plaintiff's vehicle skidded dangerously, spun 360 degrees out of control and turned up onto its two right wheels, before eventually coming to a stop in Lane 2 of the Toll Plaza, approximately 100 feet from the toll barrier.

Trooper Forte immediately responded by driving up to and parking behind Plaintiff's car in order to investigate. Mr. Forte approached the driver side window and requested that the Plaintiff produce his license and registration. Plaintiff told the Trooper that his brakes "had locked up on him," and that he "left his license at home," and that his name was "Carmen Caridi," with a date of birth of July 4, 1956. A Department of Motor Vehicles computer check revealed a valid license for that person, who later turned out to be Plaintiff's brother. When the Trooper requested that the passenger, Malone, exit the vehicle, Trooper Forte saw a knife handle sticking out of Malone's waistband. Trooper Forte noticed further that Malone seemed disoriented. Trooper Forte retrieved the knife from Malone, which turned out to be an illegal, double edged, lock-blade, so called "butterfly knife." Trooper Forte then patted Malone down, at which time he recovered four vials of crack cocaine from Malone's person.

Trooper Forte then placed Malone under arrest, at which time Plaintiff came out of his vehicle shouting, "What the fuck are you doing? Fuck You, you n———!" Plaintiff then attacked and repeatedly charged at Mr. Forte, who struggled to keep him at bay while holding onto Malone. As Trooper Forte attempted to fend off the Plaintiff's repeated attacks, he kicked the Plaintiff once in the groin with enough force so that it should have stopped a man of the Plaintiff's size. However, the kick had no effect on the Plaintiff. Trooper Forte assumed that Plaintiff's indifference to the kick in the groin was the result of drug intoxication, an assumption that was later proved correct by drug analysis after the Plaintiff's arrest.

Plaintiff again charged at the Trooper Forte with his hands behind his back, out of the Trooper's view. Trooper Forte, believing that the Plaintiff was armed and possibly reaching for a weapon, drew his service pistol and told Plaintiff to "get back." Plaintiff then backed off. Trooper Forte holstered his weapon and signaled to the toll collectors that he needed immediate assistance. Accordingly, Yonkers Toll Plaza Manager, Allen Youngstein left his office to render assistance to Forte. Youngstein witnessed Plaintiff attacking Forte again, whereupon he used Forte's police car radio to call for back up. Youngstein witnessed Forte drawing his gun again and ordering the Plaintiff to get back, whereupon the Plaintiff yelled in response, "You are nothing but a fucking n———! You are a n——— with your gun! You don't know who I am! My family runs this place!" Trooper Forte again ordered the Plaintiff to, "get back or I'll shoot." To which Plaintiff replied, "I don't care. Shoot me."

Plaintiff again lunged at Trooper Forte while shouting "I'll fuckin' kill you!" Trooper Forte was able to effectuate Plaintiff's arrest several minutes later only after a passing off-duty Investigator, Defendant Calderin, assisted. Trooper back up had not yet arrived when Calderin arrived upon the scene and helped Forte subdue the Plaintiff. Together the two officers managed to handcuff Plaintiff, who was then read his *Miranda* warning. No shots were fired, despite the Plaintiff's aggressive and life-threatening behavior. Trooper Forte injured his hand during the attack, and could smell alcohol on the Plaintiff's breath. Forte and Calderin observed behavior consistent with Plaintiff being under the influence of both alcohol and drugs. Several open containers of beer were found in the Plaintiff's car.

Following his arrest, Plaintiff was transported in handcuffs by Defendant Vigne to

the New York State Police Station at Tarrytown, New York. There Plaintiff and Malone were handcuffed to a bar on the wall, while Forte and Sergeant Rooney processed the paperwork attendant with Plaintiff's and Malone's arrests. At that location Plaintiff persisted with a torrent of racial slurs directed at Trooper Forte. These slurs included, "Fuck You. You are nothing but a n———. I'll kill you n———. You're gonna die!" Moreover, Plaintiff and Malone attempted to continue perpetrating the fraud that Plaintiff was in fact his brother Carmen. During processing this fraud was discovered. Plaintiff was identified and it was discovered that he was driving with a suspended license.

Plaintiff was then asked to take a chemical test and warned of the consequences of noncompliance. His response was, "I'm not taking no fuckin' test, n———! All you n———s belong in Alabama." While this was occurring, Malone asked a trooper to telephone his father to bring him several prescription drugs, including alprazolam. When Malone's father arrived, the drugs were brought to Malone, who immediately gave Plaintiff some. Plaintiff swallowed the drugs before he could be stopped.

Thereafter, Trooper Forte began to uncuff Plaintiff so that he could be fingerprinted, whereupon Plaintiff struck Trooper Forte in the face with his hands, augmented by the handcuffs, and did so with enough force to knock him to his knees. He then struck Forte repeatedly, while Forte attempted to subdue him by striking him in the thighs with his baton. Plaintiff yelled during the scuffle, "Just me and you n———. Die motherfucker!" Plaintiff was subdued and recuffed only after the intervention of Defendant Vigne.

Because Plaintiff had consumed Malone's prescription drugs, Plaintiff's family released his medical records to the police so that he could be treated properly. Thereafter, Plaintiff was transported to Phelps Memorial Hospital, in North Tarrytown, New York, where he was treated for drug ingestion and bruises to the groin and other parts of his body. Plaintiff, who never lost consciousness, was released from the hospital at approximately 11:30 p.m. the same day.

Thereafter, Plaintiff was arraigned in the Dobbs Ferry Village Court before Justice Badie on charges: (1) Resisting Arrest in violation of Penal Law § 205.30; (2) Assault in the Second Degree in violation of Penal law § 120.05; (3) Driving While Ability Impaired by Drugs in violation of Vehicle and Traffic Law § 1192(4); (4) Driving While Intoxicated in violation of Vehicle and Traffic Law § 1192; (5) Aggravated Harassment in the Second Degree in violation of Penal Law § 240.30; (6) Speeding in violation of Vehicle and Traffic Law § 1180(e); (7) Criminal Impersonation in Violation of Penal Law § 190.25; and (8) Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree in Violation of Vehicle and Traffic Law § 511(1).

On February 9, 1996, after a full and fair bench trial, Plaintiff was convicted of resisting arrest, aggravated harassment, criminal impersonation, aggravated unlicensed operation of a motor vehicle, and driving while ability impaired by drugs. Plaintiff was sentenced to a year in prison and was incarcerated in the Westchester County Penitentiary. Two weeks before his incarceration, Plaintiff was again arrested for resisting arrest, as well as disorderly conduct, and driving while intoxicated. Plaintiff was convicted of these crimes on May 17, 1996, and received an additional jail sentence.

On August 21, 1995, Plaintiff filed this action alleging violations of his constitutional rights including, violation of his due process and equal protection rights, violation of his right to be free of cruel and unusual punishment, conspiracy, and his right to be free from the use of excessive force during his arrest and detainment. Plaintiff further alleges that he has been rendered impotent by the kick to his groin by Trooper Forte in the course of effectuating Plaintiff's arrest. This claim is frivolous because Plaintiff's own personal physician, Dr. Dolin, who treated Plaintiff for his groin injury has reported that the Plaintiff's nodule "is completely resolved." During the Plaintiff's incarceration he was examined by a urologist, Dr. Arthur Smith, who reported that Plaintiff's testosterone levels were normal, that his genitalia were healthy, and that there was no physical ab-

normality present which would support the Plaintiff's claim of impotence.

## Discussion

Rule 56(c) of the Fed.R.Civ.P. provides that summary judgment shall be granted when it appears that there is no genuine issue as to a judgment as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). Thus, "a motion for summary judgment is properly supported by demonstrating there is no evidence supporting an issue upon which the non-moving party bears the burden of proof and which is essential to its case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party makes such a showing the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 247–48, 106 S.Ct. at 2509–10. A dispute regarding a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Aldrich v. Randolph Central School District*, 963 F.2d 520, 523 (2d Cir.1992).

■ Issues actually litigated in a state court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they would enjoy in the courts of the state where the judgment was rendered. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984). This rule also applies where the prior state court proceedings are criminal. *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). Under New York law a party is collaterally estopped from relitigating an issue in a second proceeding if the issues in both proceedings are identical, and the facts were necessarily litigated in the prior proceeding upon a full and fair hearing. *Capital Telephone Co. v. Pattersonville Telephone*

*Co.*, 56 N.Y.2d 11, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982).

■ Our Court of Appeals addressed the preclusive effect of a prior criminal conviction for resisting arrest on a subsequent claim of excessive force in the case of *Pastre v. Weber*, 907 F.2d 144 (2d Cir.1990). In *Pastre*, the Plaintiff resisted arrest by kicking a trooper, who was only able to subdue and arrest him by applying force. Plaintiff was convicted of resisting arrest, but later sued the trooper for excessive force.

The Court of Appeals concluded that the excessive force claim could not be sustained because it had necessarily been litigated in the prior criminal proceeding. *Id.* at 144. Therefore, the resisting arrest conviction had issue preclusive effect upon the excessive force claim during the period during which Plaintiff resisted arrest, and the force was presumptively reasonable. *Id.* at 144. The Court held that the matter had been necessarily litigated because in order to convict Plaintiff of resisting arrest the People would have to prove that force had been necessary to effectuate the arrest. *Id.* at 144; *See, People v. Harper*, 37 N.Y.2d 96, 99–100, 371 N.Y.S.2d 467, 332 N.E.2d 336 (1975). Accordingly, because the Plaintiff's criminal trial adjudicated that the Plaintiff resisted arrest, the force used to apprehend the Plaintiff is presumptively valid, and his claim here is barred and precluded.

■ Moreover, the Plaintiff's claim that he was subjected to excessive force during his detention in the station house is also without merit. In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court held that any claims for excessive force that arise in the course of making an arrest or seizure should be analyzed under "an objective reasonableness" standard. *Id.* at 395, 109 S.Ct. at 1871. To determine whether force is reasonable, a Court must examine (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of Officers and others; (3) whether he is actively resisting arrest. *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985). In the present case, the force used on the Plaintiff was

reasonable both in effectuating Plaintiff's arrest and subduing the Plaintiff during his detention in the station house. Plaintiff repeatedly attacked the trooper, appeared to be on drugs, ingested more drugs upon arriving at the station, struck the Trooper in the face with metal handcuffs, and hurled racial invective at the arresting officer throughout the whole incident. It is obvious that the Plaintiff posed an enormous threat to the safety of the Troopers both during his arrest and during his detention and that the Defendants had no recourse but to subdue the Plaintiff in the fashion they did. Their conduct was objectively reasonable in all respects, and indeed Trooper Forte displayed commendable calm in the face of outrageous abuse from a one-man crime wave. No reasonable juror could find that excessive force was used at the station, an issue not necessarily resolved by Plaintiff's conviction. In any event, the conduct of each Defendant is protected by good faith immunity.

Finally, Plaintiff has proved no facts which substantiate his conspiracy, due process, or equal protection claims. Accordingly, Defendants' motion for summary judgment is granted in all respects.

The Clerk shall file a final judgment.

SO ORDERED.