Mohamed ELMASRI, in person and on behalf of Nesrine Elmasri and Navine Elmasri, next best friends and closest guardian, Plaintiff,

v.

Donna ENGLAND, individually and in her capacity as a Law Guardian, an Attorney and Officer of the Court, Peter Favaro, individually and in his capacity as a Forensics Psychologist; Linda S. Morrison, individually and in her capacity as an Attorney and Officer of the Court and Colleen Rupp–Elmasri, Defendants.

No. CV 99–6868.

United States District Court,
E.D. New York.

Aug. 16, 2000.

Mohamed Elmasri, Patchogue, NY, plaintiff pro se.

Coleen Rupp–Elmasri, Patchogue, NY, defendant pro se.

Richard H. Schaffer, Lindenhurst, NY, for defendant Dr. Peter Favaro.

Reynolds, Caronia, Gianelli & Hagney, LLP by Philip A. Russo, Hauppauge, NY, for defendant Donna England.

Linda S. Morrison, Islandia, NY, defendant pro se.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a civil rights action brought by the Plaintiff, *pro se*, who names as defendants his ex-wife as well as other individuals involved in the trial of Plaintiff's divorce. The complaint, which is devoid of factual particularities, alleges fraud, perjury and other unspecified criminal conduct on the part of each defendant. A generous reading of the complaint reveals an allegation of a conspiracy to lie to the state court justice handling Plaintiff's divorce and custody proceedings, for the purpose of "inflicting severe financial and emotional distress upon the plaintiff."

Presently before the court are the motions of all defendants for summary judgment. Defendants argue that this court lacks subject matter jurisdiction over this matter based upon the Rooker–Feldman doctrine and the domestic relations exception to the jurisdiction of the federal courts. Additionally, defendants argue various immunity and lack of state action defenses.

In response to the motions, Plaintiff argues that he seeks no re-litigation of his divorce trial. Instead, he characterizes the complaint as an attempt to correct state court proceedings that have deprived him of his right to practice his religion with his children, in violation of the First Amendment to the United States Constitution.

The court holds that, however characterized, Plaintiff's complaint is, indeed, an effort to re-litigate rulings made by the state court in the context of Plaintiff's divorce and custody trial. As such, this court has no jurisdiction to decide this matter. Moreover, even if jurisdiction existed, this case should be dismissed based upon the immunity and lack of state action defenses raised by defendants. Accordingly, for these reasons, as set forth in greater detail below, the defense motions are granted in their entirety.

## BACKGROUND

I. *The Parties and the State Court Proceedings*

This case arises out of divorce and related child custody matters regarding the marriage of Plaintiff Mohamed Elmasri ("Plaintiff" or "Elmasri") and his ex-wife, Coleen Rupp–Elmasri ("Rupp–Elmasri"). In addition to naming Rupp–Elmasri as a defendant, Plaintiff names Donna England ("England"), Peter Favaro ("Dr.Favaro") and Linda Morrison ("Morrison") as defendants herein. England was the court appointed law guardian for the Elmasri children during the state court proceedings. Dr. Favaro was the court appointed psychologist and Morrison was Rupp–Elmasri's attorney.

The Elmasris were married in September of 1984 in New York. Two daughters, Nesrine and Navine, were born to Coleen Elmasri, in 1986 and 1989, respectively.

Divorce proceedings regarding the Elmasri marriage were commenced in 1995, when Rupp–Elmasri filed for divorce. Although the parties reconciled for a short period of time following the initial filing, the proceedings became active again in February of 1996.

The court need not detail here all legal events that arose during the course of the divorce action. Suffice it to say that the state court record reveals a great deal of acrimony between the parties which led to hotly contested and vindictive court battles. Much to the detriment, the court observes (as did the state court), of the Elmasri children.

In any event, the divorce and custody proceedings culminated in a seventeen day trial which began in March of 1999. The trial was held before State Supreme Court Justice Joseph Farneti, who heard the testimony of the parties as well as that of England, Dr. Favaro, and fact witnesses. The state court also had the opportunity, in the presence of England and Dr. Favaro, to interview and observe the Elmasri children.

## II. *The State Court Divorce and Custody Ruling*

In a twenty-three page, highly detailed opinion, the state court set forth its findings of fact and conclusions of law regarding the Elmasri divorce. Justice Farneti awarded full custody of the Elmasri children to Rupp–Elmasri while granting liberal visitation rights to Plaintiff.

The state court opinion outlines the history of the Elmasri marriage, finding fault with both parents regarding their rearing of the Elmasri children. Nonetheless, in support of its custody award to Rupp–Elmasri, the state court relied upon several important facts that tipped the balance in favor of its award. For example, Mohamed Elmasri was found to have incessantly demeaned his wife in front of his daughters and to have continually made disparaging remarks directly to his daughter, Nesrine. Elmasri was found to have

inappropriately disciplined his daughters, including locking his younger daughter in a closet and threatening to cut off the fingers of the older daughter for a minor transgression.

Additionally, Mohamed Elmasri was found to have been uninvolved, in any real way, with efforts to assist his eldest daughter with her school difficulties, choosing instead, to blame his wife for all of Nesrine's problems. Plaintiff was also faulted for thwarting attempts to help Nesrine with therapy by refusing to bring her to the therapist when she was in his custody. With respect to this fact, the state court commented that this "inappropriate demonstration of control illustrates [Mohamed Elmasri's] lack of understanding of the children's emotional needs." Ultimately, the state court concluded that Mohamed Elmasri had "demonstrated his inability to act in a unified fashion for the benefit of the children."

In light of these factual findings, the state court awarded sole custody of the Elmasri children to Rupp–Elmasri. While the court made several additional findings which will not be discussed, relevant here are the court's comments regarding the religious upbringing of the Elmasri children. It was noted that prior to the marriage the Elmasris agreed that, while they were of different religions, the children would be raised in the faith of their mother, Roman Catholicism. Nonetheless, the children were instructed in their Muslim heritage and attended, without objection from Rupp–Elmasri, Arabic classes at a Muslim school.

Relying on the principle that it is inappropriate for the court to interfere in the religious upbringing of children of divorce, the state court made no ruling and imposed no requirements regarding the future religious training of the Elmasri children. The court noted with favor, however, that the children had been raised in the faith of their mother while being exposed to the traditions of Islam.

The court held that ultimately, the religious training of the children is a matter that would remain the province of the custodial parent.

The appeal of the Elmasri divorce trial is presently pending in the state court.

### III. *The Complaint and the Pending Motions*

As noted, the complaint makes vague references to inappropriate conduct on the part of all defendants. As amplified by the response to the summary judgment motions, the complaint seeks to allege a civil rights violation based upon a state court ruling that allegedly deprives Plaintiff of his right to practice his religion with his children.

In support of their motions to dismiss, defendants argue that there is no jurisdiction to re-litigate a state court divorce in this federal forum and that, in any event, they are improper defendants in a civil rights action. More particularly, each defendant argues as follows.

Dr. Favaro argues that he is not a state actor and is entitled to absolute witness immunity in connection with any claim arising out of his expert testimony in the state court proceedings. Additionally, Dr. Favaro argues that this case is barred by the Rooker–Feldman doctrine, which precludes federal courts from exercising jurisdiction over cases that are "inextricably intertwined" with state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In a similar vein, Dr. Favaro argues that jurisdiction here is barred by the domestic relations exception to the jurisdiction of the federal courts. Finally, Dr. Favaro argues that this lawsuit should be dismissed pursuant to the doctrine of abstention set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Defendant Morrison argues that the claims raised herein have been fully litigated in the context of the state court divorce trial and are therefore barred by principles of res judicata and collateral estoppel. Morrison echoes Dr. Favaro's argument that the federal courts do not have jurisdiction to revisit a state court decision regarding a domestic matter. Morrison further argues that to the extent she is sued on a legal malpractice theory, no such claim lies because she owes no duty to Plaintiff, who was never her client. Morrison also argues that Plaintiff has failed to plead his fraud claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Finally, Morrison points out that Plaintiff lacks standing to bring any claim on behalf of his minor children since he is not the custodial parent, nor has he been appointed a guardian for the purpose of pursuing this matter.

Defendant Donna England argues, as do her co-defendants, that the court lacks subject matter jurisdiction over this domestic relations matter. England also argues that her status as a law guardian is insufficient to render her a state actor subject to civil rights claims. Any civil rights conspiracy claim against England is argued to be barred on the ground that the pleading is vague and conclusory. Finally, England argues that this action is barred by principles of res judicata and collateral estoppel.

Last, Colleen Rupp Elmasri, appearing *pro se*, has, essentially, adopted the various arguments set forth by her co-defendants.

### DISCUSSION

#### I. *Legal Principles*

##### A. *Standards for Summary Judgment*

A motion for summary judgment is granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir.1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of the substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

When a moving party demonstrates the absence of a genuine issue of fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is not defeated by vague assertions of unspecified disputed facts. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).[1]

### B. *Stating A Civil Rights Claim*

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show a deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993). The alleged deprivation of a constitutionally protected right is insufficient, standing alone, to state a claim under Section 1983. A second element is required—plaintiff must prove that defendant acted "under color of state law." *Briscoe v. LaHue,* 460 U.S. 325, 329–30, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Adickes v.*

*S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Annunziato v. The Gan, Inc.,* 744 F.2d 244, 249 (2d Cir.1984). This requirement excludes from the reach of Section 1983 private conduct, "however discriminatory or wrongful." *American Manufacturers Mutual Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999), quoting, *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

The "color of state law" requirement results in the imposition of liability only upon those who "carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *National Collegiate Athletic Ass'n. v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), quoting, *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Tarkanian,* 488 U.S. at 191, 109 S.Ct. 454, quoting, *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). When determining whether a person is a state actor, the court considers "the extent to which the actor relies on governmental assistance and benefits ...; whether the actor is performing a traditional governmental function ...; and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 433 (2d Cir.1995), quoting, *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 621–22, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

### C. *Stating A Section 1983 Conspiracy Claim*

Private individuals who are not state actors may nonetheless be liable un-

---

1. Plaintiff, who proceeds *pro se,* was made well aware of the consequences of a summary judgment motion. In correspondence copied to the court, counsel for Dr. Favaro explained

clearly the procedures involved. Every possible courtesy was extended to Plaintiff who was given a sufficient opportunity to respond to the various defense motions.

der Section 1983 if they have conspired with or engaged in joint activity with state actors. *Briscoe,* 460 U.S. at 330 n. 7, 103 S.Ct. 1108; *Adickes,* 398 U.S. at 152, 90 S.Ct. 1598; *Annunziato,* 744 F.2d at 250. Allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Fariello v. Rodriguez,* 148 F.R.D. 670, 677 (E.D.N.Y.1993), *aff'd,* 22 F.3d 1090 (2d Cir. 1994), quoting, *Chodos v. Federal Bureau of Investigation,* 559 F.Supp. 69, 72 (S.D.N.Y.), *aff'd,* 697 F.2d 289 (2d Cir. 1982).

 Liability for participating in a Section 1983 conspiracy may be imposed on private individuals even if the state actor is immune from liability. *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Thus, a private individual claiming immunity who is charged with conspiring with a state actor must establish his own basis for invoking an immunity defense. *See Briscoe,* 460 U.S. at 330 n. 7, 103 S.Ct. 1108.

### D. Stating a Section 1985 Conspiracy Claim

 Private individuals may be liable for conspiracy to violate the civil rights laws under 42 U.S.C. § 1985 ("Section 1985"). *See Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir.1988). The statute creates no substantive rights but, instead, provides a remedy for the deprivation of rights guaranteed by the United States Constitution. *Great Am. Fed. Sav. & Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Traggis,* 851 F.2d at 586–87.

 The elements of a claim under Section 1985 are: (1) a conspiracy; (2) motivated by racial or other discriminatory animus; (3) for the purpose of depriving any person or a class of persons of the equal protection of privileges and immunities under the law; (4) an overt act in furtherance of the conspiracy and (5) injury. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994); *Gleason v. McBride,* 869 F.2d 688, 694–95 (2d Cir. 1989); *Mele v. Christopher,* 7 F.Supp.2d 419, 421 (S.D.N.Y.1998), *aff'd,* 173 F.3d 845 (2d Cir.1999); *Sacco v. Pataki,* 982 F.Supp. 231, 246 (S.D.N.Y.1997).

 Like conspiracy claims asserted under Section 1983, conspiracy claims under Section 1985 must contain specific factual allegations. A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion for summary judgment. *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993).

### II. Plaintiff's Claims Must Be Dismissed

There are several reasons why this lawsuit must be dismissed, in its entirety, as against all defendants. The courts list here a select few.

### A. The Court Lacks Subject Matter Jurisdiction

#### 1. Rooker–Feldman, Res Judicata and Collateral Estoppel

As noted, Dr. Favaro argues that this court lacks subject matter jurisdiction over this case based upon the *Rooker–Feldman* doctrine. Co-defendants England and Morrison argue that the claims sought to be raised herein are barred by the preclusion principle of res judicata and collateral estoppel. The concepts are closely related and are discussed together.

 The Rooker–Feldman doctrine holds that federal courts lack jurisdiction over cases that seek, essentially, review of state court judgments. *Rooker–Feldman* precludes the federal courts from exercising jurisdiction over cases that are "inextricably intertwined" with a state court judgment. *Feldman,* 460 U.S. at 483 n.

16, 103 S.Ct. 1303. A federal case is inextricably intertwined with a state case if the federal claim "succeeds only to the extent that the state court wrongly decided the issues before it." *Marden v. Dinin,* 22 F.Supp.2d 180, 185 (S.D.N.Y.1998), quoting, *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

Closely related to the Rooker–Feldman doctrine are the preclusion principles of res judicata and collateral estoppel. When determining the reach of the Rooker–Feldman doctrine, the Second Circuit has recognized that claims are "inextricably intertwined" under a Rooker–Feldman analysis if the latter-asserted claim would be barred by state law principles of res judicata and collateral estoppel. Thus, the Second Circuit has stated that Rooker–Feldman's application is, at least, co-extensive with state law preclusion principles. *See Moccio v. New York State Office of Court Administration,* 95 F.3d 195, 199–200 (2d Cir.1996); *see also Hachamovitch v. DeBuono* 159 F.3d 687, 696 (2d Cir. 1998); *accord Beharry v. M.T.A. New York City Transit Authority,* 1999 WL 151671 * 4 (E.D.N.Y. March 17, 1999); *Hernandez v. City of New York,* 2000 WL 145749 * 2 (S.D.N.Y. February 7, 2000). Thus, it is appropriate to consider such principles when determining the reach of the Rooker–Feldman doctrine. *Id.*[2]

■ Res judicata bars re-litigation of a claim actually raised as well as a claim that might have been raised in a prior proceeding. New York courts hold that where claims arise from the same " 'factual grouping' they are deemed to be part of the same cause of action and a later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief." *Davidson v. Capuano,* 792 F.2d 275, 278

(2d Cir.1986), citing, *Smith v. Russell Sage College,* 54 N.Y.2d 185, 192–93, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981). Thus, res judicata bars re-litigation of claims actually raised in a prior proceeding as well as those that could have been litigated. *Quartararo v. Catterson,* 917 F.Supp. 919, 944 (E.D.N.Y.1996).

■ Collateral estoppel, also known as issue preclusion, will preclude re-litigation of an issue if the issue sought to be precluded is identical to the issue in the second proceeding and is one which has necessarily been decided in an earlier proceeding in the context of a full and fair opportunity to litigate. *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995); *Caridi v. Forte,* 967 F.Supp. 97, 100 (S.D.N.Y.1997); *see Capital Telephone Co. v. Pattersonville Telephone Co.,* 56 N.Y.2d 11, 17–18, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982); *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). The party seeking preclusion bears the burden of showing the identity of issues while the party against whom collateral estoppel is asserted bears the burden of showing the absence of a full and fair opportunity to litigate. *Colon,* 58 F.3d at 869; *Quartararo,* 917 F.Supp. at 944; *Capital Tel.,* 56 N.Y.2d at 18, 451 N.Y.S.2d 11, 436 N.E.2d 461.

Collateral estoppel is applied to protect litigants from multiple lawsuits and to conserve judicial resources. The doctrine "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1485 (2d Cir.1995), quoting *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

---

**2.** The court considers the preclusion law of the state of New York, pursuant to the Full Faith and Credit Clause of the Constitution which requires a federal court to give the same preclusive effect to a state court judgment "as would be given under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Johnson v. Watkins,* 101 F.3d 792, 794 (2d Cir.1996).

Despite Plaintiff's protests to the contrary, it is clear to the court that the complaint herein is an attempt to overturn, at least in part, the decision of the state court regarding the custody of the Elmasri children. While Plaintiff states that he does not wish to have the custody award overturned, there is no question but that Plaintiff seeks a change with regard to the state court comments concerning the religious education of the Elmasri children.[3]

The claim raised by Plaintiff here, that the testimony relied upon by the state court was somehow fraudulent, is the precise claim raised by Elmasri and rejected by the state court in the divorce proceedings. Indeed, the state court characterized Plaintiff's allegations regarding Dr. Favaro's testimony as "baseless" and "unsupported by the record." It was also noted that Dr. Favaro's opinion was "grounded upon appropriate fact finding and evaluation using appropriate criteria."

Had the state court accepted Elmasri's version of events, and his characterization of the expert testimony, it would likely have granted custody, and the attendant ultimate determination of religious training of the Elmasri children, to Plaintiff. It did not so rule. Instead, the state court accepted the expert and witness testimony here challenged, when reaching its conclusion. In view of the ruling granting custody to Rupp–Elmasri, Plaintiff's claims were necessarily decided against Plaintiff by the state court. They are therefore barred by the principle of collateral estoppel. *Colon*, 58 F.3d at 869; *Caridi*, 967 F.Supp. at 100.

In view of the fact that Plaintiff's claims are barred by collateral estoppel, they are also necessarily barred by the Rooker–Feldman doctrine. Applying that doctrine, the court notes again, that Plaintiff's claim of fraud must have been rejected by Justice Farneti when he made the award of custody. Accordingly, Plaintiff's claims succeed "only to the extent that the state court wrongly decided the issues before it." *Marden*, 22 F.Supp.2d at 185. As such, they are clearly barred by the *Rooker–Feldman* doctrine. *See, e.g., Storck v. Suffolk County Dep't of Social Services*, 62 F.Supp.2d 927, 938 (E.D.N.Y.1999); *Fariello*, 860 F.Supp. at 64–67; *accord Murray v. Administration for Children's Services*, 1999 WL 33869 at *2 (S.D.N.Y.1999) (dismissing civil rights claims that would have required federal court to revisit family court order requiring removal of children from parent); *George v. Letren*, 1998 WL 684857 at *3 (S.D.N.Y.1998) (dismissing case that could have resulted in overturning of paternity and child support decisions of state court).

## 2. *Domestic Relations Exception to Federal Jurisdiction*

In addition to being barred by the Rooker–Feldman doctrine, jurisdiction over this matter is barred by the domestic relations exception to the jurisdiction of the federal courts. This doctrine "divests the federal courts of power to issue divorce, alimony and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *see Mitchell–Angel v. Cronin*, 101 F.3d 108, 1996 WL 107300 *2 (2d Cir. 1996); *American Airlines v. Block*, 905 F.2d 12, 14 (2d Cir.1990).

Applying this exception to jurisdiction, courts will dismiss civil rights actions aimed at changing the results of domestic proceedings, including orders of child custody. *See, e.g., Abidekun v. New York City Bd. of Education*, 1995 WL 228395 *1 (E.D.N.Y. April 6, 1995); *Fariello*, 148 F.R.D. at 675; *McArthur v. Bell*, 788

---

**3.** The court refers to the state court ruling regarding religious education as "comments" because, contrary to Plaintiff's characterization of that ruling, the state court stated only that the religious education was within the province of the custodial parent. It did not, as Plaintiff appears to argue here, bar Plaintiff from practicing his religion with his children. Indeed, the state court commented favorably on the Elmasris' attempt to make the children aware of their Islamic heritage.

F.Supp. 706, 708 (E.D.N.Y.1992); *Neustein v. Orbach,* 732 F.Supp. 333, 339 (E.D.N.Y.1990).

Plaintiff here seeks relief he did not obtain in his divorce and child custody trial. While Plaintiff states that he does not wish to revisit the award of custody, adjudication of his claims would force this court to "re-examine and re-interpret all the evidence brought before the state court" in the earlier state proceedings. *McArthur,* 788 F.Supp. at 709. As such, this action is barred by the domestic relations exception to this court's jurisdiction. *See also Neustein,* 732 F.Supp. at 339 (action barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation matters . . .").

### B. *Even Assuming Jurisdiction The Case Must Be Dismissed*

While it is clear to the court that this matter is outside of the jurisdiction of this court, the court observes, that even if there were jurisdiction, there are several additional reasons why the case must be dismissed.

#### 1. *Lack of State Action Bars Any Section 1983 Claims*

■ Plaintiff's Section 1983 claims must be dismissed because no defendant is a state actor. First, it is clear that neither Rupp–Elmasri nor her attorney, defendant Morrison, are state actors. They acted purely as private individuals in connection with the state court proceedings. *See Di Costanzo v. Henriksen,* 1995 WL 447766 *2 (S.D.N.Y. July 28, 1995) (dismissing for various reasons, including lack of state action, civil rights claim brought against, *inter alia,* law guardian, plaintiff's ex-wife's attorney and court-appointed psychologist).

■ Nor can Dr. Favaro and Donna England be deemed state actors. Neither their appointment by a New York State court, nor the fact that they were paid by state funds, are sufficient to render them state actors. *Storck,* 62 F.Supp.2d at 941–42. Moreover, the mere fact that an individual testifies at a court proceeding does not render that person a state actor. *Briscoe,* 460 U.S. at 329–30, 103 S.Ct. 1108. Additionally, as this court has held, guardians *ad litem,* although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of Section 1983. *Storck,* 62 F.Supp.2d at 941–42. The same holding applies to Dr. Favaro, whose independent judgment is without question and whose connection with the state is the same as that of England. *Id.; see Di Costanzo,* 1995 WL 447766 at *2; *Fariello,* 148 F.R.D. at 682; *Levine v. County of Westchester,* 828 F.Supp. 238, 244 (S.D.N.Y.1993); *Neustein,* 732 F.Supp. at 346. *See also Offutt v. Kaplan,* 884 F.Supp. 1179, 1192 (N.D.Ill.1995) (dismissing civil rights claims against law guardians on ground they act as judicial officers and are therefore entitled to absolute immunity). Accordingly, neither England nor Dr. Favaro may remain in this lawsuit as state actors under Section 1983.

#### 2. *The Conclusory Pleading Fails to State Any Conspiracy Claim*

While state action is not a necessary prerequisite to Plaintiff's conspiracy claims, the claims may not stand absent clear pleading of facts in support of the claimed conspiracy. As noted, allegations of conspiracy must be more than vague and conclusory to survive a motion for summary judgment.

Here, the complaint alleges the existence of a conspiracy in the most conclusory of fashions. No facts are alleged in support of the conspiracy claim. Instead, Plaintiff repeats the same colorful adjectives, without factual elaboration, in support of his vague claims of conspiracy against each defendant. Such claims can-

not survive motions for summary judgment.

### 3. All Claims Against Dr. Favaro and Donna England Are Barred By Witness Immunity

██ In addition to the grounds discussed above, both Dr. Favaro and Donna England are entitled to absolute witness immunity.

The common law doctrine of absolute witness immunity shields witnesses from civil rights claims. *Briscoe*, 460 U.S. at 334, 103 S.Ct. 1108. This immunity extends to all persons, whether governmental, expert, or lay witnesses, integral to the trial process. *Id.* at 335. The rationale for absolute witness immunity lies in the concern that witnesses fearing civil liability for their testimony might not be willing to come forward to testify or might give distorted testimony. *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993). Protecting witnesses from liability encourages witnesses to testify and furthers the fact-finding and truth-seeking process of the courts. *Briscoe*, 460 U.S. at 333–35, 103 S.Ct. 1108.

Here, any claim against Dr. Favaro and/or Donna England are claims that seek redress based upon testimony that these individuals provided in the context of the Elmasri divorce proceeding. As such, the claims are barred by the doctrine of absolute witness immunity. *Storck*, 62 F.Supp.2d at 946; *DiCostanzo v. Henriksen*, 1995 WL 447766 *2 (S.D.N.Y. July 28, 1995).

### CONCLUSION

For the foregoing reasons, the court dismisses all civil rights claims. To the extent that they may exist, the court declines to exercise pendent jurisdiction over any state law claims. Accordingly, all pending motions for summary judgment are granted. The Clerk of the Court is directed to close this case.

SO ORDERED.