Ellen STORCK, Aaron Drew Storck, Courtney Drew, Dana Drew and Joshua Drew, Plaintiffs,

v.

SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Gary Rosenthal, Individually and as an Assistant County Attorney with the Suffolk County Attorney's Office, Arza Feldman, Individually and as the law guardian appointed for the infants Courtney, Dana and Joshua Storck, Andrea McKenzie, Individually and as

928

the law guardian appointed for the infant, Aaron Drew Storck, Heidi Hilton, Individually and as the law guardian appointed for the infant, Aaron Drew Storck, Vivien Misshula, Individually and as a Case Worker employed by the Suffolk County Department of Social Services, Mary Peabody, Individually and as a Case Worker employed by the Suffolk County Department of Social Services, Dr. Mayer Sagy, Individually and as the Chief of Pediatric Intensive Care Unit of Schneider's Childrens Hospital, Dr. Philip Lanzkowski, Individually and as Chief of Staff of Schneider's Childrens Hospital, Dr. Gerald Novack, Individually and as a member of Pediatric Neurology Staff of Schneider's Childrens Hospital, Dr. Laura Nimkoff, Individually and as a Resident of the Pediatric Intensive Care unit of Schneider's Childrens Hospital, Dr. Herbert Schreier, Individually and as a witness for the Suffolk County Department of Social Services, and John Doe and all others as yet unidentified agents of the County of Suffolk, who have acted in violation of the rights of the plaintiffs herein, Defendants.

No. CV 97–2880.

United States District Court,
E.D. New York.

Aug. 11, 1999.

Jeremiah B. McKenna, Staten Island, NY, for plaintiffs.

Robert J. Cimino, Suffolk County Attorney, Jeltje deJong, Assistant County Attorney, Department of Social Services, Gary Rosenthal, Vivien Misshula and Mary Peabody, Hauppauge, NY, for defendants Suffolk County.

Ahmuty, Demers & McManus, Christopher P. Cartier, Albertson, NY, for defendants McKenzie and Hilton.

Feldman & Feldman, Arza Rayches Feldman, Roslyn, NY, for defendant Feldman.

Schaub, Ahmuty, Citrin & Spratt, Todd McCauley, Lake Success, NY, for defendants Sagy, Lanzkowski, Novack and Nimkoff.

McAloon & Friedman, P.C., Theodore Rosenzweig, New York City, for defendant Schreier.

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

This is a civil rights case the facts of which arise out of a New York State Family Court order that removed Aaron Storck from the custody of his mother, plaintiff Ellen Storck. The proceedings that led to Aaron's removal from his mother's custody date back to 1992 when a petition was filed in Suffolk County Family Court charging Ellen Storck with neglect. Briefly stated, the neglect petition charged that Ellen Storck suffered from Munchausen Syndrome by Proxy ("MSP"), a psychological disorder in which a person fabricates symptoms of illness in her child for the purpose of gaining the attention of medical personnel. The state family court found that Ellen Storck suffered from MSP, granted the neglect petition and removed Aaron Storck from his mother's custody.

Plaintiffs' civil rights action alleges that virtually every person involved in the family court proceedings violated plaintiffs' civil rights. The claims are alleged pursuant to 42 U.S.C. §§ 1983 and 1985 and sound in an alleged deprivation of rights without due process of law. Specifically, plaintiffs have sued: (1) the Suffolk County Department of Social Services, ("DSS"); (2) Gary Rosenthal, the Suffolk County Attorney charged with prosecuting the case against Ellen Storck; (3) Arza Feldman, Andrea McKenzie and Heidi Hilton, three attorneys who served as court-appointed law guardians for Aaron Storck and his siblings; (4) Vivien Misshula and Mary Peabody, case workers employed by the DSS; (5) Drs. Sagy, Lanzkowski, Novack and Nimkoff, physicians who treated Aaron Storck in 1992 and (6) Dr. Herbert Schreier, a physician who testified as an expert witness at the family court proceedings regarding Ellen Storck's mental health.

Presently before the court are the motions of all defendants to dismiss. For the reasons set forth below, the motions are granted in part and denied in part.

## BACKGROUND

### I. The Removal of Aaron Storck From Ellens Storck's Custody

As noted above, the factual basis for plaintiffs' civil rights action is the removal of Aaron Storck from Ellen Storck's custody and the proceedings related thereto. Aaron Storck was born in 1984. According to the complaint, Aaron suffered a Sudden Infant Death Syndrome ("SIDS") episode approximately one month after his birth and was thereafter diagnosed as suffering from apnea, a condition involving cessation of breathing and the failure of the automatic resumption of respiration.

After his 1984 hospitalization, Aaron was not again hospitalized until 1988, when it is alleged he was admitted to Huntington Hospital for an appendectomy. Plaintiffs allege that because of his history of apnea, Aaron was placed on a breathing monitor after his surgery. Plaintiffs allege that the breathing monitor registered several alarms during Aaron's 1988 hospitalization.

In 1989, allegedly after an apnea episode, Aaron was admitted to Huntington Hospital and shortly thereafter transferred to Schneider's Childrens Hospital ("Schneiders"), where he came under the care of pediatric neurologist, defendant Dr. Gerald Novack. According to plaintiffs, Dr. Novack referred Aaron to Johns Hopkins Hospital for further testing regarding his apnea. Plaintiffs' complaint states that the Johns Hopkins testing led to a diagnosis of apnea and the recommendation that Aaron be placed on a breathing monitor and that he sleep with his mother so that she could awaken him to stimulate his breathing if the monitor alarm sounded.

It was in 1992, during a hospitalization at Schneiders, that allegations regarding Ellen Storck and MSP began to surface. Specifically, Dr. Meyer Sagy, the Chief of Critical Care at Schneiders and Dr. Phillip Lanzkowski, the Chairman of Pediatrics at Long Island Jewish Medical Center, monitored Aaron and determined that he did not suffer from apnea. Plaintiffs' complaint contains allegations regarding Ellen Storck's refusal to consent to a tracheostomy, the facts surrounding which are unclear. What is clear, however, is that Drs. Sagy and Lanzkowski came to the opinion that Ellen Storck fabricated Aaron's apnea and hypothesized that Ellen Storck had MSP.

Shortly thereafter, the doctors at Schneiders contacted DSS and Aaron was detained at Schneiders from July 22, 1992 until August 6, 1992 when, after a hearing conducted on August 4, 1992, an order was signed by Suffolk County Family Court Justice David Freundlich, removing Aaron from Ellen Storck's custody and placing Aaron in foster care in Suffolk County. At the August 4 hearing, defendant Dr. Laura Nimkoff, a resident physician at Schneiders, testified that she contacted personnel at Johns Hopkins Hospital who informed her (contrary to the allegations in plaintiffs' complaint) that Aaron was not diagnosed with apnea during his testing at that facility.

The August 1992 hearing was followed by a December 1992 fact finding hearing before Justice Freundlich. Defendant Drs. Sagy, Lanzkowski and Novack testified at that hearing. Each testified that Ellen Storck suffered from MSP. Their testimony was supported by the testimony of nurses who were present during Aaron's stay at Schneiders. Also testifying at the December 1992 hearing was defendant Dr. Schreier, who was presented as an expert witness by DSS. Dr. Schreier testified that Ellen Storck suffered from MSP. Plaintiffs state that Dr. Schreier also testified regarding Ellen Storck's son, Joshua, and stated that Joshua did not suffer from a seizure disorder, as alleged by his mother, and that Ellen Storck's MSP most likely started with Joshua.

At the conclusion of the December 1992 hearing, Justice Freundlich found that plaintiff had neglected Aaron and ordered that he remain in foster care. Ellen Storck's older children were allowed to remain in her custody, under the supervi-

sion of DSS. Justice Freundlich's order was appealed and affirmed by the Appellate Division of the Supreme Court. *See In re Suffolk County Department of Social Services on behalf of Aaron A. (Anonymous) a/k/a/ Aaron D. (Anonymous)*, 215 A.D.2d 395, 626 N.Y.S.2d 227 (1995). Defendant Feldman was appointed as the law guardian for Aaron's siblings. The Law Guardian Bureau of the Legal Aid Society, by staff attorneys McKenzie and Hilton, served as Aaron Storck's law guardians.

While in foster care in Suffolk County, Aaron's case was monitored by defendant Vivien Misshula, a case worker employed by DSS. Aaron Storck remained in foster care in Suffolk County until 1994, when custody was transferred to John and Diane Gintz, cousins of Ellen Storck who reside in Ohio. While under the care of the Gintzes in Ohio, defendant Mary Peabody, also a DSS case worker, became involved in Aaron's case.

After the December 1992 hearing, the Family Court conducted yearly reviews of Aaron Storck's case and extended the provision that he remain in foster care. At a hearing held on March 1, 1996. Ellen Storck's alleged violations of court orders were before the court. The court found Ellen Storck to be in contempt of its orders. The court sentenced Ellen Storck to six months imprisonment, which was suspended.

In January 1997, Ellen Storck moved to Ohio. On January 30, 1997, DSS filed a petition with the Family Court to extend Aaron's Ohio placement. At a hearing held on February 24, 1997, which was not attended by Ellen Storck, the court extended Aaron's Ohio placement. Shortly thereafter, Ellen Storck removed Aaron from Ohio and moved to Florida with all of her children.

In May of 1997, DSS moved to regain custody of Aaron from the Ohio placement. The application was granted on May 30, 1997 and an order was entered in Family Court on June 10, 1997. This order directed that Aaron be removed from his Florida home and held by the Broward County, Florida, Department of Children and Families pending his return to Suffolk County.

Proceedings in Florida were handled on behalf of Suffolk County by attorney Michael Berry. These proceedings included an examination of Aaron and Ellen Storck. According to plaintiff, these examinations revealed no evidence of MSP and no neglect of Aaron. In January of 1998, the Broward County judge handling Aaron's case signed an order returning custody of Aaron to Ellen Storck.

II. *Plaintiffs' Allegations of Improper Conduct*

Plaintiffs make several allegations of foul conduct regarding the removal of Aaron Storck from Ellen Storck's custody. Plaintiffs allege that during the August 4, 1992 hearing Ellen Storck was threatened with arrest and/or institutionalization by defendant attorney Rosenthal and Justice Freundlich. Plaintiffs argue that all testimony presented regarding Ellen Storck's MSP diagnosis (testimony presented by defendant doctors Schreier. Sagy, Lanzkowski, Novack and Nimkoff) was either fabricated or, at the least, not based on proper psychiatric diagnostic principles.

Plaintiffs allege that Aaron was abused while in foster care in Suffolk County. Aaron was allegedly denied mail and phone calls to family and friends and was denied access to a Bible. It is alleged that numerous requests to the DSS case workers and the Family Court for intervention during 1993 and 1994 fell on deaf ears. It is also alleged that defendant Misshula threatened to terminate Aaron's visits with his mother if he complained about conditions at his foster home.

Defendants McKenzie, Rosenthal and Feldman are also alleged to have been involved in a scheme to cover-up the abusive conditions at Aaron's Suffolk County foster home. Rosenthal is alleged to have told Aaron that he would be in "real trouble" if he disclosed the conditions at the

foster home to Ellen Storck's plaintiff's attorney. Defendant Hilton is alleged to have been involved in the prosecution of Ellen Storck by cross-examining her during the contempt proceedings.

Plaintiffs also allege various irregularities regarding Social Security and child support payments unlawfully withheld by DSS. Briefly stated, plaintiffs allege that defendant Peabody wrongfully withheld Supplemental Security Income ("SSI") payments from the Gintzes. These funds were allegedly meant to be used for Aaron's care and therapy.

Plaintiffs' allegations regarding wrongful conduct aimed at Aaron's siblings Dana, Courtney and Joshua relate to allegedly illegal actions by defendants Misshula, Rosenthal and Feldman. It is alleged that defendants Rosenthal and Feldman illegally procured the childrens' medical records. Defendant Misshula is alleged to have interfered with the children's schooling by misinforming school officials regarding the ability of these children to submit to medical examinations and participate in sports activities. Defendant Misshula is alleged to have unlawfully obtained Dana's school counseling records. Defendant Peabody is alleged to have threatened Dana with reprisals if she sought medical attention for any reason whatsoever.

Defendant Feldman is alleged to have breached her duties of confidentiality by speaking about the children on television and by making their medical conditions public. Finally, it is alleged that defendant Feldman wrongfully attempted to have Joshua taken off his anti-seizure medication.

Plaintiffs also allege irregularities with respect to proceedings in Florida. It is alleged that Justice Freundlich improperly contacted the Broward County judge hearing Aaron's case and told him that Ellen Storck was a danger to Aaron. Ellen Storck alleges that she was improperly detained in Florida and that Michael Berry (who is not a defendant) improperly interfered with the Florida doctor assigned to investigate Aaron's condition.

III. *The Causes of Action*

Plaintiffs' amended complaint, which spans thirty-four pages and includes 136 paragraphs, sets forth seven separate causes of action. The first cause of action seeks a declaratory judgment that Section 1072 of Article 10 of the New York Family Court Act, pursuant to which Ellen Storck was held in contempt of the family court's orders in 1996, is unconstitutional. The claim of unconstitutionality rests on the argument that this statute fails to provide the full complement of constitutional protections to which a criminal defendant is entitled and therefore runs afoul of the Fifth and Fourteenth Amendments to the Constitution.

Plaintiffs' second cause of action is asserted against defendants DSS and case workers Misshula and Peabody. This cause of action alleges that these defendants failed to protect Aaron Storck from the abuse he allegedly suffered at the Suffolk County foster home. This cause of action further alleges that these defendants deliberately withheld Aaron's SSI, Medicaid and child support payments from Aaron's Ohio foster parents. DSS, Misshula and Peabody are also alleged to have interfered with the presentment of physician reports favorable to Ellen Storck to the family court and thereby denied plaintiffs of the right to a fair hearing before that court.

The second cause of action also seeks redress for injuries allegedly suffered by Aaron Storck's siblings Dana, Courtney and Joshua. Defendants' interference with the school activities of the siblings is alleged to have violated the siblings' rights to privacy and are alleged to have been undertaken to retaliate against plaintiffs for resisting the neglect proceedings regarding Aaron Storck. All actions of defendants named in the second cause of action are alleged to have occurred under color of state law and to have deprived

plaintiffs of their rights to privacy under the First, Fourth, Fifth and Ninth Amendments to the United States Constitution.

Plaintiffs' third cause of action is alleged against defendant Gary Rosenthal, the assistant Suffolk County attorney who prosecuted the neglect proceeding. Rosenthal's actions, which are alleged to have been undertaken "under color of state law, but outside of his official capacity," include allegedly improper *ex parte* communications with Justice Freundlich, threatening Aaron with "real trouble" if he spoke of his foster home conditions and conspiring with Michael Berry to have plaintiff illegally arrested in Florida. The last-mentioned action is alleged to have been taken in retaliation for plaintiffs' filing of this civil rights actions. Though not specifically stated, it appears that the third cause of action alleges deprivation of plaintiffs' rights to due process of law.

Plaintiffs' fourth cause of action alleges wrongdoing by the law guardians assigned to the Storck children—defendants Feldman, McKenzie and Hilton. These defendants are alleged to have acted in concert with defendant state actors Misshula, Peabody and Rosenthal when they failed to aid Aaron when he was being abused in Suffolk County foster care. Defendant Feldman is alleged to have improperly subpoenaed Joshua's pharmaceutical records. The sole factual allegation against defendant Hilton is that she "acted in concert with defendant Rosenthal and actively prosecuted the plaintiff for criminal contempt by cross-examining her on behalf of the prosecution." Defendants Feldman, McKenzie and Hilton are alleged to have denied plaintiffs of their rights of equal protection under the Sixth Amendment to the Constitution and due process of law under the Fifth Amendment to the Constitution.

Plaintiffs' fifth cause of action is alleged against the defendant doctors at Schneiders who cared for Aaron Storck and testified during the neglect proceedings. These doctors are alleged to have illegally detained Aaron at Schneiders between July 22, 1992 and August 6, 1992—the time period in between providing information of possible abuse of Aaron Storck to Suffolk County officials and the first hearing on the neglect petition. These doctors are also charged with offering false testimony regarding Ellen Storck's MSP. The actions of these doctors are alleged to have deprived plaintiff Ellen Storck of the constitutional right to custody of her son and of her right to equal protection and due process of law.

Plaintiffs' sixth cause of action is alleged against defendant doctor Schreier, who testified at the December 1992 hearing regarding Ellen Storck's MSP. This cause of action alleges that Schreier's testimony was false and contradicted the medical records. Dr. Schreier is alleged to have conspired with defendants DSS and Rosenthal in providing this false testimony. This testimony is alleged to have deprived plaintiffs of the "due process right to have true testimony only presented against her" by DSS, defendant Rosenthal and their witness, defendant Schreier.

Finally, plaintiffs allege a seventh cause of action against defendants DSS, Rosenthal. Misshula and Peabody. This cause of action alleges violation of 20 U.S.C. § 1232(g)(6)(2) by the unlawful subpoena of Aaron's siblings' educational records. This allegedly unlawful subpoenaing is also alleged to have deprived plaintiffs of their "federally protected privacy rights as to their educational and counseling records, humiliation, and interference with their education."

### IV. *Prior Proceedings in this Court*

This case was initiated in May 1997, by way of order to show cause seeking preliminary injunctive relief. Plaintiffs sought an order preventing DSS from attempting to take Aaron back into state custody. Shortly thereafter, plaintiffs attempted to remove state court neglect proceedings to this court. Citing a lack of

likelihood of success on the merits, the request for preliminary injunctive relief was denied and the removed family court proceedings were remanded.

Plaintiffs appealed this court's judgment to the Court of Appeals for the Second Circuit. In an order dated June 5, 1998, the Second Circuit affirmed this court's judgment in its entirety. While the Second Circuit noted Ellen Storck's constitutionally protected liberty interest in having custody of her children and her right to notice and an opportunity to be heard before they are removed from her care, the court agreed that Ellen Storck did not show a likelihood of success on her claims. The Second Circuit further held that this court had properly remanded the family court proceedings.

In September 1998, this court held a conference in this matter. Plaintiffs' request to file an amended complaint (the allegations of which are detailed above) was granted and a briefing schedule for all motions to dismiss was established. Those motions are presently before the court.

### V. Summary of Defendants' Motions

Defendants move to dismiss on various grounds. Suffolk County Assistant County Attorney Rosenthal, along with the DSS case workers Misshula and Peabody seek dismissal of the entire cause of action on the basis of the *Rooker–Feldman* doctrine, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). These defendants argue that this court lacks subject matter jurisdiction because plaintiffs' claim is nothing more than an attempt to seek review of the state family court judgment.

Several defendants seek dismissal on the ground of absolute immunity. Specifically, defendant Rosenthal seeks absolute prosecutorial immunity. The defendant law guardians, Feldman, Hilton and McKenzie also seek absolute immunity and, in the alternative, qualified immunity. The defendant doctors seek dismissal based upon absolute witness immunity.

In addition to claiming immunity, the defendant doctors and guardians Hilton, McKenzie and Feldman seek to have the complaint dismissed because they are not state actors and the complaint lacks sufficient factual allegations of conspiracy pursuant to 42 U.S.C. § 1983. These defendants also seek dismissal of any private conspiracy cause of action pursuant to 42 U.S.C. § 1985, because plaintiffs have not properly alleged discriminatory animus and the facts alleged against them are too vague and conclusory to state a claim. Defendant Feldman argues that any claim based upon an alleged violation of New York State law governing the subpoenaing of pharmaceutical or medical records does not apply to the facts herein. The court considers each motion below.

### DISCUSSION

### I. Legal Principles

#### A. Motions To Dismiss

Defendants' motions are made in the context of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco Corp. v. Segui*, 91 F.3d 337, 341 (2d Cir.1996); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). When considering a motion to dismiss for failure to state a claim, the court can consider only the facts as set forth in the complaint or documents attached thereto. When considering the facts pled, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 63 (2d Cir.1997). A complaint should not be dismissed sim-

ply because a plaintiff is unlikely to succeed on the merits. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). With these principles in mind, the court turns to defendants' motions.

### B. *The Rooker–Feldman Doctrine*

■ As noted, several defendants seek dismissal on the ground that this court lacks subject matter jurisdiction over this case based upon the *Rooker–Feldman* doctrine. That doctrine holds that federal courts lack jurisdiction over cases that seek, essentially, review of state court judgments. *Rooker–Feldman* precludes the federal courts from exercising jurisdiction over cases that are "inextricably intertwined" with a state court judgment. *Feldman,* 460 U.S. at 483 n. 16. A federal case is inextricably intertwined with a state case if the federal claim "succeeds only to the extent that the state court wrongly decided the issues before it." *Marden v. Dinin,* 22 F.Supp.2d 180, 185 (S.D.N.Y.1998), quoting, *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

If plaintiffs' complaint was nothing more than an attempt to obtain custody of Aaron, in contravention of the family court orders, there is no question that this case would be nothing more than an attempt to appeal the state court's decision—a claim that would clearly be barred by the *Rooker–Feldman* doctrine. *See, e.g., Fariello v. Campbell,* 860 F.Supp. 54, 64–67 (E.D.N.Y.), *aff'd,* 22 F.3d 1090 (2d Cir. 1994). Plaintiffs' claims, however, are broader and not so easily categorized. Keeping in mind the important interests sought to be achieved by declining to exercise jurisdiction over cases that seek nothing more than review of a state court decision, the court turns to consider application of the *Rooker–Feldman* doctrine.

■ Certain aspects of plaintiffs' claims would undoubtedly undermine the decision in the 1992 neglect proceeding and lead to the inescapable conclusion that the family court ruling was "wrong." For example, claims premised on the notion that the testimony provided by doctors Sagy, Lanzkowski, Novack, Nimkoff and Schreier lacked factual and medical support, are claims that were specifically rejected when Justice Freundlich held that these doctors had testified credibly. The family court's findings on these matters go to the core of the neglect proceeding against Ellen Storck. Any finding by this court to the contrary would completely undermine the family court order on the neglect proceeding. Accordingly, to the extent that plaintiffs' claims are based upon allegedly false and unsupported testimony of the doctors, the claims succeed "only to the extent that the state court wrongly decided the issues before it." *Marden v. Dinin,* 22 F.Supp.2d 180, 185 (S.D.N.Y.1998), quoting, *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). *Rooker–Feldman* divests this court of jurisdiction to hear such claims. *Accord Murray v. Administration for Children's Services,* 1999 WL 33869 at *2 (S.D.N.Y.1999); *George v. Letren,* 1998 WL 684857 at *3 (S.D.N.Y. 1998).

■ On the other hand, the claim that Section 1072 of the Family Court is unconstitutional on its face is a claim that is not barred by *Rooker–Feldman. See Feldman,* 460 U.S. at 482–85; *Campbell v. Greisberger,* 80 F.3d 703, 707 (2d Cir.1996); *George v. Letren,* 1998 WL 684857 at *3. Similarly, plaintiffs' allegations of conspiracy involving the case workers and the county attorney regarding the monitoring of Aaron's condition while in foster care and the withholding of support payments are not issues that were necessarily litigated in the context of the state court neglect proceeding. Therefore, these claims do not appear to be barred by *Rooker–Feldman.*

In sum, while the question is close, much of plaintiffs' amended complaint alleges more than the simple claim that the family

court was wrong. While the claims are certainly intertwined with the state court proceedings, the court holds, at this juncture, that only the claims against the doctors are barred by *Rooker–Feldman.* As discussed below, other claims are barred for different, independent reasons, while certain claims remain for trial.

### C. Stating A Civil Rights Claim

#### 1. Deprivation of a Constitutional Right

■ To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show a deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993). The constitutional right alleged to have been deprived here is Ellen Storck's constitutionally protected liberty interest in the custody of her children, a right that is subject to due process protection. *Storck v. Suffolk County,* 152 F.3d 920, 1998 WL 398817 (2d Cir.1998), citing, *Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir.1977); *see Stanley v. Illinois,* 405 U.S. 645, 649, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Cecere v. City of New York,* 967 F.2d 826, 829 (2d Cir.1992).[1]

■ Despite the parent's due process rights, a child may be taken from his parent's custody without a hearing where the child is threatened with immediate harm. *Hurlman v. Rice,* 927 F.2d 74, 80 (2d Cir.1991); *Sundbye v. Ogunleye,* 3 F.Supp.2d 254, 264–65 (E.D.N.Y.1998). Even in such cases, however, the constitutional rights to notice and an opportunity to be heard are not eliminated, "but mere-

ly postponed." *Sundbye,* 3 F.Supp.2d at 265.

#### 2. State Action Requirement

■ The alleged deprivation of a constitutionally protected right is insufficient, standing alone, to state a claim under Section 1983. A second element is required—a plaintiff must prove that defendant acted "under color of state law." *Briscoe,* 460 U.S. at 329–30, 103 S.Ct. 1108; *Adickes v. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Annunziato v. The Gan, Inc.,* 744 F.2d 244, 249 (2d Cir.1984). This requirement excludes from the reach of Section 1983 private conduct, "however discriminatory or wrongful." *American Manufacturers Mutual Ins. Co. v. Sullivan,* 526 U.S. 40, ——, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999), quoting, *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

■ The "color of state law" requirement results in the imposition of liability only upon those who "carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *National Collegiate Athletic Ass'n. v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), quoting, *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Tarkanian,* 488 U.S. at 191, 109 S.Ct. 454 quoting, *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). When determining whether a person is a state actor, the court considers

---

**1.** It is unclear as to whether plaintiffs seek to state a claim pursuant to the substantive component of the due process clause. To state such a claim, plaintiffs must show governmental abuse of power that rises to the level of outrageous government conduct that is "arbitrary, or conscience-shocking, in a constitutional sense." *Collins v. City of Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061,

117 L.Ed.2d 261 (1992). The court holds that the allegations in plaintiffs' complaint do not rise to such a level. *Accord Sundbye v. Ogunleye,* 3 F.Supp.2d 254, 261–62 (E.D.N.Y.1998) (allegedly sexually harassing comments by case worker who accused plaintiff of child abuse do not rise to level of substantive due process violation).

"the extent to which the actor relies on governmental assistance and benefits ...; whether the actor is performing a traditional governmental function ...; and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 433 (2d Cir.1995) (citations omitted), quoting, *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 621–22, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

### 3. Stating A Section 1983 Conspiracy Claim

 Private individuals who are not state actors, may nonetheless be liable under Section 1983 if they have conspired with or engaged in joint activity with state actors. *Briscoe,* 460 U.S. at 330 n. 7, 103 S.Ct. 1108; *Adickes,* 398 U.S. at 152, 90 S.Ct. 1598; *Annunziato,* 744 F.2d at 250. Allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Fariello v. Rodriguez,* 148 F.R.D. 670, 677 (E.D.N.Y.1993), quoting, *Chodos v. Federal Bureau of Investigation,* 559 F.Supp. 69, 72 (S.D.N.Y.), *aff'd.,* 697 F.2d 289 (2d Cir. 1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983).

 Liability for participating in a Section 1983 conspiracy may be imposed on private individuals even if the state actor is immune from liability. *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Thus, a private individual claiming immunity who is charged with conspiring with a state actor must establish his own basis for invoking an immunity defense. *See Briscoe v. LaHue,* 460 U.S. 325, 330 n. 7, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

### 4. Stating a Section 1985 Conspiracy Claim

 In addition to being named as conspirators along with state officials to im-

pose Section 1983 liability, private individuals may be liable for conspiracy to violate the civil rights laws under 42 U.S.C. § 1985 ("Section 1985"). Section 1985 applies to conspiracies of private individuals as well as state actors. *See Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir.1988). The statute creates no substantive rights but, instead, provides a remedy for the deprivation of rights guaranteed by the United States Constitution. *Great Am. Fed. Sav. & Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Traggis,* 851 F.2d at 586–87.

 The elements of a claim under Section 1985 are: (1) a conspiracy; (2) motivated by racial or other discriminatory animus; (3) for the purpose of depriving any person or a class of persons of the equal protection of privileges and immunities under the law; (4) an overt act in furtherance of the conspiracy and (5) injury. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994); *Gleason v. McBride,* 869 F.2d 688, 694–95 (2d Cir. 1989); *Mele v. Christopher,* 7 F.Supp.2d 419, 421 (S.D.N.Y.1998), *aff'd,* 173 F.3d 845, 1999 WL 245864 (2d Cir.1999); *Sacco v. Pataki,* 982 F.Supp. 231, 246 (S.D.N.Y. 1997).

 Like conspiracy claims asserted under Section 1983, conspiracy claims under Section 1985 must contain specific factual allegations. A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss. *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993).

 The "class" that is the subject of the allegedly "invidious discrimination," required to be pled in a Section 1985 case, cannot be defined merely as the class of alleged victims. Instead, the discriminatory animus referred to must be based upon racial or other class-based motive. The

element of "racial" or "otherwise class-based, invidiously discriminatory animus" was explored by the Supreme Court in Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). There, the court characterized the phrase "or otherwise class-based invidiously discriminatory animus" as a "speculative" extension, beyond race, of the class of individuals intended to be protected by Section 1985. Bray, 506 U.S. at 269, 113 S.Ct. 753.

The Court in Bray did not decide the issue of whether women in general constituted a "class" for purposes of Section 1985. Instead, the Court decided only that a class comprised of "women seeking abortion" did not constitute a class of individuals on behalf of whom a Section 1985 claim could be stated. Bray, 506 U.S. at 269–70, 113 S.Ct. 753. The invidious distinction referred to in Section 1985 requires, at the least, a distinction that focuses on women, because of their sex. Although only women can have abortions, the Court has rejected the notion that the mere fact that only women can engage in activity renders every classification based upon that activity as discrimination based upon sex. Id. at 269, 113 S.Ct. 753.

## D. Dismissal Motions Based Upon Lack of State Action And Improper Claims of Conspiracy

The defendant doctors and law guardians seek dismissal of plaintiffs' complaint on the ground that they are not state actors and therefore cannot be liable under Section 1983. These defendants argue further that plaintiffs have failed to state a claim for conspiracy either pursuant to Section 1983 or Section 1985.

### 1. Neither the Doctors Nor the Law Guardians Are State Actors

Several courts have considered the state involvement requirement of the civil rights statutes in contexts similar to the facts here. For example, it has been held that the mere fact that an individual testifies at a court proceeding does not render that person a state actor. Briscoe, 460 U.S. at 329–30, 103 S.Ct. 1108. When considering the state action requirement of a court appointed representative, courts focus on whether the duty of the person appointed runs to the state or the individual client. For example, a legal services agency providing legal representation to an indigent party exercises independent judgment in the best interests of his client and is therefore not considered a state actor for purposes of Section 1983. Neustein v. Orbach, 732 F.Supp. 333, 345–46 (E.D.N.Y. 1990), citing, Meeker v. Kercher, 782 F.2d 153, 155 (10th Cir.1986). For similar reasons, it has been held that guardians ad litem, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of Section 1983. Di Costanzo v. Henriksen, 1995 WL 447766 (S.D.N.Y.1995) at *2; Fariello, 148 F.R.D. at 682; Levine v. County of Westchester, 828 F.Supp. 238, 244 (S.D.N.Y.1993); Neustein, 732 F.Supp. at 346. See also Offutt v. Kaplan, 884 F.Supp. 1179, 1192 (N.D.Ill. 1995) (dismissing civil rights claims against law guardians on ground they act as judicial officers and are therefore entitled to absolute immunity). It has also been held that private hospitals and physicians reporting suspected instances of child abuse do not become state actors simply because the reporting is carried out pursuant to state law. Thomas v. Beth Israel Hospital Inc., 710 F.Supp. 935, 940–41 (S.D.N.Y. 1989).

 Applying the principles referred to above, the court holds that neither the law guardians nor the defendant doctors are state actors for purposes of Section 1983. Neither the fact that the law guardians were appointed by a New York State court nor the fact that they were paid by state funds is sufficient to render these individuals state actors. Moreover, the independent judgment that these individuals were bound to exercise

on behalf of their clients further negates a finding that they acted under color of state law. The mere fact that the defendant doctors reported their suspicions of child abuse pursuant to a state statute does not render the defendant doctors at Schneiders state actors. Accordingly, neither the defendant law guardians nor the defendant doctors may remain in this lawsuit as state actors under Section 1983.

### 2. Plaintiffs Do Not State a Section 1983 Conspiracy Claim

Having determined that the law guardians and doctors are not state actors, the court must determine whether plaintiffs have alleged facts sufficient to impose liability on these defendants for acting in concert with state actors. As noted above, allegations of conspiracy must be more than vague and conclusory to survive a motion to dismiss.

■ At the outset, the court holds that the allegations against law guardian defendant Hilton fall far short of what is required to state a claim. Indeed, plaintiffs' sole factual allegation against Hilton states that she (along with defendant Feldman) "acted in concert with attorney Rosenthal and actively prosecuted the plaintiff for criminal contempt by cross-examining her on behalf of the prosecution." This lone allegation is plainly insufficient to state a Section 1983 conspiracy claim against defendant Hilton.

■ The allegations against defendants Feldman and McKenzie are somewhat more detailed. These defendants are alleged to have conspired with the defendant case workers and county attorney to avoid seeking legal remedies to end the abuse of Aaron Storck while he was in foster care in Suffolk County. In support of this allegation plaintiffs state that Feldman and McKenzie were present, along with attorney Rosenthal, at the meeting requested by Aaron Storck's attorney regarding Aaron's foster care. While Rosenthal is alleged to have threatened Aaron with "real trouble" if he disclosed the abuse, neither Feldman nor McKenzie is alleged to have made threats nor are they alleged to have been present when such threats were made—they are only alleged to have been present at the meeting when Ellen Storck's attorney appeared. Such an allegation does not support the claim that these law guardians were actively involved in a conspiracy with Rosenthal to hide allegations of abuse.

■ Additional allegations against defendant Feldman state that she improperly subpoenaed Joshua's medical records and breached her duty of confidentiality by appearing on television and discussing the case of the children she represented. Feldman's allegedly improper subpoenaing of medical records appears to have been undertaken pursuant to the exercise of her duties as Joshua's law guardian. This allegation, standing alone, does not allege the deprivation of any constitutional right. In any event, neither this act nor the act of appearing on television allege the requisite "acting in concert with a state official" necessary to state a Section 1983 conspiracy claim. In light of the foregoing, all Section 1983 claims against defendants Feldman, McKenzie and Hilton are dismissed.

### 3. Plaintiffs Do Not State A Section 1985 Conspiracy

■ Plaintiffs' Section 1985 claims fare no better than the Section 1983 claims. As noted above, to state a claim pursuant to Section 1985, plaintiff must allege some racial or otherwise class-based animus. To support this element, plaintiffs claim that Ellen Storck is part of a class of "Munchausen mothers." Just as the group of women seeking abortions in *Bray* did not constitute discrimination based upon gender, any group of "Munchausen mothers" similarly does not constitute a class based distinction based solely on gender. Indeed, as even plaintiffs must concede, MSP is a syndrome that can be manifested in either sex. Thus, the court

need not decide whether a gender-based distinction is a sufficient class-based distinction to state a claim pursuant to Section 1985.

The court rejects the notion that a class of "Munchausen mothers" is a sufficient distinction on which to state a claim pursuant to Section 1985. Putting aside for the moment Ellen Storck's vehement denial that she is a member of such a class, the definition of a "Munchausen mother" is a mother that abuses her children, continually putting them in imminent danger of death. The court declines to hold that discrimination against such a group is the type of "invidious class-based discrimination" that Section 1985 intends to prohibit. Based upon the foregoing and the Supreme Court's ruling in *Bray,* as discussed above, the court holds that plaintiffs have not alleged the existence of class-based discrimination sufficient to state a claim pursuant to Section 1985. For the foregoing reasons, all Section 1985 claims against defendants McKenzie, Feldman and Hilton are dismissed.[2]

### E. County Attorney Rosenthal's Claim Of Prosecutorial Immunity (The Third Cause of Action)

The doctrine of prosecutorial immunity protects a "state prosecuting attorney who acted within the scope of his duties in initiating and pursuing" a prosecution. *Kalina v. Fletcher,* 522 U.S. 118, 124, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997), quoting, *Imbler v. Pachtman,* 424 U.S. 409, 410, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995). Such immunity includes immunity from charges that false testimony has been offered as well as charges that exculpatory evidence has been suppressed. *Kalina,* 522 U.S. at 124–25, 118 S.Ct. 502.

Absolute immunity also protects a prosecutor charged with malicious prosecution or improper conduct when appearing in court in support of a search warrant. *Id.* at 124, 125–26, 118 S.Ct. 502. A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. *See Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995). An allegation of conspiracy to perform the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity. *See Pinaud,* 52 F.3d at 1148–49; *Hill,* 45 F.3d at 662.

Prosecutorial immunity applies not only to the prosecutor himself, but extends to "officials performing certain functions analogous to those of a prosecutor." *Butz v. Economou,* 438 U.S. 478, 515, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Functions likely to be granted absolute immunity are those "integrally related to the judicial process." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Applying this rationale, it is has been held that attorneys who initiate and prosecute child protective orders on behalf of a county department of social services are entitled to absolute prosecutorial immunity. *Walden v. Wishengrad,* 745 F.2d 149, 152 (2d Cir.1984). Similarly, the county department employing the attorney has been held to be entitled to full prosecutorial immunity. *Levine,* 828 F.Supp. at 243–44; *Neustein,* 732 F.Supp. at 346.

Though broadly stated, the doctrine of absolute prosecutorial immunity is not so broad as to cover all actions of a prosecutor. The doctrine exists to protect the office of the prosecutor, not the individual who holds that office. *Kalina,* 522 U.S. at 125–26, 118 S.Ct. 502; *Pinaud,* 52 F.3d at 1146. When a prosecutor engages in conduct that casts him in the role of administrator or investigator, rather than as an advocate, his actions are pro-

---

**2.** Even if a "class" were sufficiently stated, the Section 1985 conspiracy claims, which are too vague and conclusory to state a claim under Section 1983 are similarly too vague to state a Section 1985 claim.

tected only by qualified, rather than absolute, immunity. *Kalina,* 522 U.S. at 125–26, 118 S.Ct. 502. Qualified immunity shields individuals from liability if their conduct did not violate clearly established constitutional rights and it was objectively reasonable for them to have believed that their conduct did not violate those rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The analysis of whether conduct is protected by absolute or qualified immunity requires a consideration of the nature of the function performed, rather than the identity of the actor performing the function. *Kalina,* 522 U.S. at 127, 118 S.Ct. 502. Applying this rule, it has been held that a prosecutor is entitled to qualified immunity only in connection with the offering of legal advice to police investigating a possible crime. *Id.* at 126, 118 S.Ct. 502; *see Burns v. Reed,* 500 U.S. 478, 492–96, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Similarly, qualified immunity applies to claims arising out of a prosecutor's holding of a press conference. *Kalina,* 522 U.S. at 126, 118 S.Ct. 502. Claims arising out of the alleged fabrication of evidence relating to an unsolved crime are entitled to qualified immunity only because such claims are held to arise out of the prosecutor's exercise of an "investigative" function, normally performed by detectives or police officers. *Id.*

■ The mere allegation, as set forth in plaintiffs amended complaint, that a prosecutor acted "under color of state law, but outside his official capacity as County Attorney," is insufficient to strip a prosecutor of the cloak of absolute immunity. Instead, the court must closely consider the nature of the activities forming the basis for the plaintiff's causes of action and decide whether such claims are prosecutorial in nature.

The claims against attorney Rosenthal can be summarized as follows. Rosenthal is alleged to have engaged in *ex parte* communications with Justice Freundlich regarding Ellen Storck's mental health

and possible commitment. Rosenthal is alleged to have participated in a meeting with Aaron Storck in 1993. The meeting was allegedly requested by Ellen Storck's attorney to discuss conditions at Aaron's Suffolk County foster home. According to plaintiffs, prior to the meeting, Rosenthal threatened Aaron with "real trouble" if Aaron disclosed to his mother's attorney the abuse that Aaron was suffering. Rosenthal is also alleged to have "arranged the suspension" of Ellen Storck's welfare payments in retaliation for Storck's resistance to the removal of Aaron Storck from her custody. Finally, Rosenthal is alleged to have wrongfully conspired with Michael Berry, the attorney representing Suffolk County in Florida, to have Ellen Storck illegally arrested in connection with proceedings in that state.

■ Analyzing plaintiffs' claims under the functional approach discussed above, the court holds that certain claims are properly dismissed on the ground of absolute immunity. Others must await factual development before further disposition. Specifically, the claims alleging *ex parte* communications in 1992 with Justice Freundlich regarding Ellen Storck's mental health relate to attorney Rosenthal's prosecutorial functions in regard to the neglect petition and are therefore subject to absolute immunity and must be dismissed. Similarly, the claims arising out of any contact with attorney Michael Berry in connection with the Florida proceedings were undertaken as part of the overall prosecution of Ellen Storck. Rosenthal's conduct in aiding attorney Berry is clearly prosecutorial in nature and entitled to absolute immunity. Accordingly, the court dismisses the claims outlined in paragraphs 112, 115 and 116 of the amended complaint. Further, to the extent that Rosenthal is charged with seeking to influence the testimony of doctors testifying at the neglect proceeding, those claims are entitled to absolute immunity and are dismissed. *See Kalina,* 522 U.S. at 124–25, 118 S.Ct. 502.

 Claims regarding the suspension of Ellen Storck's welfare payments and the threatening of Aaron Storck during the 1993 meeting, however, are not easily categorized as falling within Rosenthal's prosecutorial function. The suspension of welfare payments, if true, does not appear to be linked with the prosecution of Ellen Storck and absolute immunity would therefore not apply. Attorney Rosenthal's participation in the 1993 meeting with Aaron Storck falls within an investigative, rather than a prosecutorial, role. That the meeting was also attended by case workers investigating claims of possible abuse supports this conclusion. Accordingly, the court cannot dismiss, at this juncture, the claims arising out of alleged threats made by attorney Rosenthal shortly before the 1993 meeting attended by Rosenthal and DSS case workers. Rosenthal's motion to dismiss claims alleged in paragraphs 113 and 114 of the amended complaint on the ground of absolute immunity are therefore, denied.

### F. The Defendant Doctors' Claims of Witness Immunity And *Immunity Pursuant to the New York Child Protective Services Act*

In addition to the grounds discussed above, the defendant doctors have moved to dismiss all claims pursuant to the common law doctrine of witness immunity and immunity under New York State law. The court has dismissed all claims premised upon the doctors' in-court testimony based upon the *Rooker–Feldman* doctrine. The court here discusses the doctrine of witness immunity as an alternate ground for dismissal. The court discusses the state law immunity claim.

#### 1. *Witness Immunity*

 The common law doctrine of absolute witness immunity shields witnesses from civil rights claims. *Briscoe,* 460 U.S. at 334, 103 S.Ct. 1108. This immunity extends to all persons, whether governmental, expert, or lay witnesses, integral to the trial process. *Id.* at 335, 103 S.Ct. 1108. The rationale for absolute witness immunity lies in the concern that witnesses fearing civil liability for their testimony might not be willing to come forward to testify or might give distorted testimony. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Protecting witnesses from liability encourages witnesses to testify and furthers the fact-finding and truth-seeking process of the courts. *Briscoe,* 460 U.S. at 333–35, 103 S.Ct. 1108.

#### 2. *New York Statutory Immunity*

In addition to claiming witness immunity, the doctors who treated Aaron Storck claim immunity pursuant to New York statutory law. Specifically, the defendant doctors who initially suspected that Ellen Storck suffered from MSP and reported their suspicions to Suffolk County authorities seek immunity from liability pursuant to the New York State Child Protective Services Act ("CPSA"). *See* N.Y.Soc. Serv.L. § 411 et seq. (McKinney 1992).

The CPSA requires that individuals, like the doctor defendants here, report any reasonable belief that a child in their care is an abused or maltreated child. *See* N.Y.Soc.Serv.L. § 413. When a hospitalized child is the subject of a report made pursuant to the CPSA, the hospital may take all necessary measures to protect the child, including retaining custody of the child until the next day upon which a family court proceeding may be commenced. N.Y.Soc.Serv.L. § 417(2). The CPSA makes the failure to report a reasonable suspicion of abuse a criminal offense. N.Y. Social Serv.L. § 420.

The CPSA has a broad immunity provision. Specifically, the act provides that individuals reporting suspected cases of abuse shall be immune from civil liability arising out of the reporting. Thus, any individual or institution making a CPSA report is afforded good faith immunity from civil or criminal liability that might otherwise arise from their acts. The good faith of the reporting individual is to be

presumed, if the person making the report "was acting in the discharge of their duties and within the scope of their employment," and, further, there is no evidence of wilful misconduct or gross negligence of the reporting party. N.Y. Social Serv.L. § 419.

Plaintiffs' claims against Drs. Sagy, Lanzkowski, Novack and Nimkoff allege that Aaron's detention at Schneiders based upon these doctors' suspicion that Ellen Storck had MSP violated Ellen Storck's civil rights. It is further alleged that these doctors' testimony in court during the neglect proceedings constituted a violation of Ellen Storck's right to due process of law. Dr. Schreier, who testified only as an expert witness on behalf of DSS, is alleged to have violated Ellen Storck's due process rights by way of his in-court testimony.

■ To the extent that plaintiffs' claims are based upon improper in-court testimony, the claims are dismissed. It is without question that these doctors are entitled to absolute witness immunity with respect to their testimony in court regarding Ellen Storck's MSP. That such testimony is alleged to have been without basis and contradictory to acceptable medical practice is irrelevant. These doctors were entitled to testify as to their opinions and cannot be held in civil liability resulting therefrom. This ruling alone requires dismissal of all claims against Dr. Schreier and the in-court testimony claims asserted against the Schneiders doctors.

■ To the extent that the plaintiffs' claims against the Schneiders doctors are based upon the "detention" of Aaron at Schneiders pending the family court neglect hearing, the court holds that these defendants are immune pursuant to the CPSA immunity provision. The CPSA has been applied in the context of a civil rights case stemming from the alleged improper identification of a child as a possible abused child. *See Thomas v. Beth Israel Hospital,* 710 F.Supp. 935, 941–42 (S.D.N.Y.1989). There, the court dis-missed a claim against a physician reporting suspected child abuse based upon the CPSA good faith immunity defense. *Id.* Here, as in *Thomas,* the reporting doctors are entitled to invoke the immunity defense of the CPSA. Clearly, when the doctors reported their suspicions of abuse they were acting "in the discharge of their duties and within the scope of their employment." *See* N.Y.Soc.Serv.L. § 419. Further, as lengthy as the amended complaint is, and despite the allegations of conspiracy between these doctors and attorney Rosenthal, there is no evidence of wilful misconduct or gross negligence on the part of the doctors. That Justice Freundlich found the testimony of the doctors credible is further evidence of a lack of misconduct or negligence. *See In re Aaron S., a/k/a Aaron D.,* 163 Misc.2d 967, 625 N.Y.S.2d 786, 792 (Fam.Ct. Suffolk County 1993).

### G. The Claims Against The Case Workers (The Second Cause of Action)

Defendants Misshula and Peabody, along with defendant Rosenthal, raised the *Rooker–Feldman* doctrine as a bar to the exercise of this court's jurisdiction. That issue has previously been discussed. To the extent that any of plaintiffs' claims against these defendants undermine the family court ruling that Ellen Storck suffered from MSP, those claims are beyond the jurisdiction of this court. Accordingly, the court dismisses the claims set forth in paragraph 108 of the second cause of action in the amended complaint. At this juncture, the remaining claims set forth in the second cause of action remain.

### H. Qualified Immunity

The court notes that it has reached no decision concerning the application of the doctrine of qualified immunity. Where, as here, government employees like Misshula, Peabody and Rosenthal are sued in their individual capacities arising out of performance of discretionary functions, qualified

immunity may protect the individual from liability. *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). Qualified immunity applies if it was objectively reasonable for the defendant to believe that her actions did not violate a clearly established federally protected right. *Id.*

Ultimately, the question at trial will be whether it was objectively reasonable for each individual defendant to believe that his or her actions did not violate plaintiffs' constitutionally protected rights. That is a question that this court reserves for the jury in this matter.

I. *Claims Based Upon 20 U.S.C. § 1232(g)(6)(2) (The Seventh Cause of Action)*

Plaintiff alleges that defendants DSS, Misshula, Peabody and Rosenthal violated the rights of Aarons Storck's siblings pursuant to 20 U.S.C. § 1232(g)(6)(2). The statute to which the complaint refers is the Family Educational Rights and Privacy Act ("FERPA"). Broadly stated, this statute requires educational institutions receiving federal funds to allow parents of students attending these schools access to their children's education records. *See* 20 U.S.C. § 1232g(a)(1)(A).

Although not properly cited, plaintiffs appear to complain of a violation of 20 U.S.C. § 1232g(b)(2), which prohibits educational institutions receiving federal funds from having policies of releasing educational information unless, *inter alia,* such information is furnished in compliance with a lawfully issued subpoena, and the parents are made aware of the subpoena prior to disclosure. Plaintiffs claim that the subpoenaing of Aaron's siblings' educational records by DSS, the case workers and defendant Rosenthal, without the consent of Ellen Storck, violated plaintiffs' rights under FERPA.

 At the outset, the court notes that there is no private right of action created by FERPA. *Fay v. South Colonie Central School District,* 802 F.2d 21, 33 (2d Cir.1986). However, FERPA has been held to create an interest that may be vindicated in the context of a Section 1983 cause of action. *Id.*

The facts surrounding plaintiffs' Section 1983 FERPA claim are unclear at this stage of the proceedings. The court raises, but does not decide, the issue as to whether Ellen Storck retained any rights under FERPA after Aaron was removed from her custody and his siblings were placed under the supervision of DSS. Nor does the court decide the issue of the propriety of any subpoenas issued for school records. The principles of qualified immunity, as referred to above, apply to any cause of action based upon a FERPA violation and the record is not sufficiently developed to decide whether immunity applies. For these reasons, the court denies any motion to dismiss plaintiffs' seventh cause of action at this time, but instead, will await factual development of this cause of action at trial.

## CONCLUSION

For the foregoing reasons, the court dismisses all claims against the defendant doctors (the fifth and sixth causes of action) pursuant to the *Rooker–Feldman* doctrine and on the grounds of common law witness immunity and immunity under the New York State Child Protective Services Act. The court further dismisses the claims against these defendants on the ground that they are not state actors and there are insufficient allegations of a civil rights conspiracy.

The court dismisses all claims against the law guardians (the fourth cause of action) on the ground that they are not state actors and plaintiffs have not sufficiently pled the existence of any civil rights conspiracy.

The claims against defendant Rosenthal set forth in paragraphs 112, 115 and 116 of the third cause of action in the amended complaint are dismissed on the ground of absolute prosecutorial immunity.

The claims against defendants Misshula and Peabody set forth in paragraph 108 of

the second cause of action in the amended complaint is dismissed.

The court denies the motion to dismiss the seventh cause of action.

The court notes that the first cause of action, raising the unconstitutionality of Section 1072 of the Family Court Act has not been the subject of a dismissal motion. This issue is amenable to such a motion that is best disposed of prior to trial.

The parties will proceed to trial on the seventh and remaining portions of the second and third causes of action. The defendants remaining in this litigation are defendants DSS, Misshula, Peabody and Rosenthal.

This Memorandum and Order disposes of all outstanding motions to dismiss. The court anticipates that this case will shortly be trial ready. Upon receipt of this memorandum and order, the parties are to contact the court to schedule a status and pretrial conference. At that time, if plaintiffs express the desire to pursue the first cause of action, the court will establish a briefing schedule with respect to an appropriate motion to dismiss. The court will also set a date for trial of this matter.

SO ORDERED.